United States District Court
Southern District of Texas
ENTERED
September 28, 2026
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| JESSICA RODRIGUEZ, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-24-2852 |
| | § | |
| SABRE INDUSTRIES, INC., | § | |
| SABRE COMMUNICATIONS CORP., | § | |
| ANDY ANDRADE, and | § | |
| CHRIS BROWN, | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM OPINION AND ORDER**
**ADOPTING IN PART JUDGE PALERMO'S REPORT AND RECOMMENDATION**
**AND GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Plaintiff brings this action against Defendants, Sabre Industries, Inc., Sabre Communications, Corp. ("Sabre" or "Sabre Defendants"), for hostile work environment, sex discrimination, constructive discharge, and retaliation under both Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq. ("Title VII"), and the Texas Commission on Human Rights Act, Texas Labor Code, §§ 21.001 et seq., and against Andy Andrade ("Andrade") and Chris Brown ("Brown") for infliction of bodily injury, threat of bodily injury, and offensive physical contact under Texas common law.[1] Pending before the court are Judge Palermo's Report and Recommendation (Docket Entry No. 97), recommending that the court grant in part and deny in part Defendants' Motion for Summary

[1]Plaintiff's First Amended Complaint, Docket Entry No. 32, pp. 11-15. Page numbers for docket entries refer to the pagination inserted at the top of the page by the court's electronic filing system.

Judgment (Docket Entry No. 60); Defendants' Objections to Report and Recommendations ("Defendants' Objections") (Docket Entry No. 98); Plaintiff's Response to Defendants' Objections to Report and Recommendation ("Plaintiff's Response") (Docket Entry No. 99); Defendants' Reply in Further Support of Their Objections to Report and Recommendations ("Defendants' Reply") (Docket Entry No. 100); and Plaintiff's Motion to Strike Defendants' Reply in Further Support of Their Objections to Report and Recommendations ("Plaintiff's Motion to Strike") (Docket Entry No. 101).

Asserting that "Defendants' 15-page Reply introduces no less than 6 new cases in support of their position,"[2] Rodriguez seeks an order striking Defendants' Reply (Docket Entry No. 100). Because the court has been able to rule on Defendants' Objections to Judge Palermo's Report and Recommendation without referring to any the cases newly cited in Defendants' Reply, Plaintiff's Motion to Strike will be denied as moot.

After conducting a de novo review of the objected-to portions of the Report and Recommendations, and reviewing the unobjected-to portions and determining that they are neither clearly erroneous nor contrary to law, the court concludes that Defendants' Objections should be sustained in part and overruled in part, the Report and Recommendation should be adopted in part and rejected in part, and Defendants' Motion for Summary Judgment (Docket Entry No. 60) should be granted.

---

[2]Plaintiff's Motion to Strike, Docket Entry No. 101, p. 2.

## I. UNDISPUTED FACTS

The Sabre Defendants design, manufacture, and service "infrastructure for utilities, telecommunications, and other essential services."[3] At all times relevant to this action Brown served as Sabre's Vice-President and General Manager of the galvanizing division at three locations, including Conroe, Texas.[4] Brown was based in Alvarado, Texas, and visited the Conroe location periodically.[5]

In June of 2021 Sabre hired Plaintiff, Jessica Rodriguez ("Plaintiff" or "Rodriguez") as a Human Resources Specialist in Conroe.[6] On June 28, 2021, Rodriguez acknowledged receipt of Sabre's Employee Handbook, and reviewed the handbook together with Human Resources Manager Rona Shannon ("Shannon").[7] Rodriguez

---

[3]Declaration of Lisa Harrison ("Harrison Declaration"), Exhibit A to Defendants' Motion for Summary Judgment, p. 1 ¶ 2, Docket Entry No. 60-1, p. 1.

[4]Oral Deposition of Christopher Eric Brown ("Brown Deposition"), Exhibit B to Defendants' Motion for Summary Judgment, pp. 18:11-22:12, 27:18-29:5, Docket Entry No. 60-5, pp. 4-6.

[5]Id. at 19:20-20:6, 21:7-14, 22:10-18, Docket Entry No. 60-5, pp. 4-5.

[6]Oral and Video Deposition of Jessica Rodriguez ("Rodriguez Deposition"), pp. 27:9-29:23, Exhibit B to Defendants' Motion for Summary Judgment, Docket Entry No. 60-2, p. 4. Excerpts from Rodriguez's deposition also appear as Exhibit A to Plaintiff's Response to Defendants' Motion for Summary Judgment(Docket Entry No. 75-1).

[7]Policy Acknowledgement: Sabre Industries Employee Handbook, Exhibit C to Defendant's Motion for Summary Judgment, Docket Entry No. 60-3. See also Rodriguez Deposition, pp. 33:15-34:22, Docket Entry No. 60-2, pp. 5-6 (acknowledging receipt and review of Employee Handbook).

reported directly to Shannon, and when Shannon was unavailable she reported to Human Resources Specialist Jennifer Reidel ("Reidel").[8] Shannon reported to Lisa Harrison, who was the ultimate authority and supervisor over the Conroe Human Resources department,[9] and Sabre's Vice President of Human Resources.[10]

The Sabre Employee Handbook contains a Non-Harassment Policy that describes sexual harassment to include "unwanted sexual advances, requests for sexual favors, graphic, verbal, or physical conduct of a sexual nature."[11] Sabre's Harassment Policy states that

> [r]egardless of whether the action occurred on or off Sabre premises, if you believe that you have been harassed by a co-worker, supervisor, agent, vendor, or customer, or if you believe that another employee has been harassed, you have a duty to promptly report the facts of the incident or incidents, and names of the individuals involved, to your local Human Resources Department. You may also make a report directly to your immediate supervisor but are not required to do so. Any supervisory or managerial employee who receives such a complaint must promptly report it to Human Resources. Employees may make complaints either verbally or in writing.[12]

---

[8]Rodriguez Deposition, p. 35:8-23, Docket Entry No. 60-2, p. 6.

[9]Id. at 37:14-24, Docket Entry No. 60-2, p. 6.

[10]Harrison Declaration, Docket Entry No. 60-1, p. 1 ¶ 1.

[11]Discrimination, Harassment, and Equal Opportunity Policy, Exhibit D to Defendants' Motion for Summary Judgment, Docket Entry No. 60-4, pp. 2-3.

[12]Id. at 3.

A "partial list of prohibited types of offensive behavior which could constitute sexual harassment" includes "[p]hysical conduct, including touching, assault."[13]

Sabre's Non-Harassment Policy also states that

> [w]hen Sabre receives allegations of harassment, Sabre will conduct a fair, timely and thorough investigation that provides all parties appropriate due process and reaches reasonable conclusions based on the evidence collected. . . Based upon Sabre's conclusions from the investigation, . . . Sabre will take appropriate corrective and disciplinary action to remedy the situation and resolve the matter. . .
>
> . . .
>
> All managerial employees, including administrators, directors, managers, and supervisors, as well as human resources professionals and persons with lead responsibilities, will also be held accountable for failing to take appropriate action to address harassment. . . .[14]

In the January-February 2022 time frame, Brown and Rodriguez went out for dinner and drinks, after which they engaged in consensual sex, which neither of them disclosed to Sabre.[15]

On June 28, 2022, Brown invited Rodriguez, Reidel, and Conroe Plant Superintendent, Andy Andrade, to an after-work dinner.[16] The group ordered food and alcoholic drinks that Brown paid for with a

---

[13]Id.

[14]Id. at 3-4.

[15]Rodriguez Deposition, pp. 102:24-114:9, 120:16-20, Docket Entry No. 60-2, pp. 18-22. See also Brown Deposition, pp. 31:19-34:8, 76:18-80:1, Docket Entry No. 60-5, pp. 7-8, 12-13.

[16]Rodriguez Deposition, p. 71:10-21, Docket Entry No. 60-2, p. 10.

company credit card.[17] After dinner the group moved to a nearby bar for more drinks.[18] When the group left the bar, Andrade drove home.[19] Brown offered to take Rodriguez and Reidel home. When they arrived at Reidel's house, Reidel and Brown tried unsuccessfully to wake Rodriguez, who appeared to be intoxicated; Reidel went inside her house, and Brown left to take Rodriguez home.[20]

According to Brown, shortly after he dropped Reidel off, Rodriguez woke up, crawled into the front seat, took off all her clothes and posed for a nude photo.[21] Brown took the photo on his company phone and sent it by text to his nephew and a friend "to brag."[22] Brown then took Rodriguez to his hotel where they had sex in the front seat of his truck, and then went to bed in his room.[23] The next morning Rodriguez woke up in Brown's hotel room, unable to remember what had happened.[24] Brown drove Rodriguez to her car.[25]

---

[17]Brown Deposition, p. 93:18-24, Docket Entry No. 60-5, p. 16.

[18]Rodriguez Deposition, p. 89:18-94:18, Docket Entry No. 60-2, pp. 14-16.

[19]Oral Deposition of Andy Andrade ("Andrade Deposition"), p. 52:4-10, and GPS travel records, Exhibits F and I, respectively, to Defendants' Motion for Summary Judgment, Docket Entry Nos. 60-6, p. 5, and 60-9.

[20]Brown Deposition, pp. 64:5-66:22, Docket Entry No. 60-5, pp. 9-10.

[21]Id. at 66:23-68:5, 86:6-18, Docket Entry No. 60-5, pp. 10, 15.

[22]Id. at 85:14-87:1, Docket Entry No. 60-5, pp. 14-15.

[23]Id. at 69:2-70:8, Docket Entry No. 60-5, pp. 10-11.

[24]Rodriguez Deposition, p. 100:11-99:22, Docket Entry No. 60-2, p. 17.

[25]Id. at 101:20-102:2, Docket Entry No. 60-2, pp. 17-18.

When Rodriguez arrived to work her friend, Juan Carlos Garcia ("Garcia"), Sabre's maintenance manager at the Conroe facility, sent a text asking her "what was going on," and telling her that rumors were swirling about the previous night. Garcia lead Rodriguez to speculate that people were gossiping that she had sex with both Brown and Andrade.[26] Although Garcia never identified who was spreading the rumors, Rodriguez speculated it was Andrade or his assistant, Iris Valdez ("Valdez").[27] At lunchtime, Rodriguez and Garcia met at Rodriguez's apartment, and Rodriguez told Garcia that she woke up with Brown in his hotel room but did not remember what had happened.[28] Rodriguez testified that she never reported or planned to report Garcia's comments to anyone at Sabre, and that Garcia was the only person she told about the event with Brown.[29]

Later that afternoon Rodriguez left work early and contacted Brown to tell him about the rumors. According to Rodriguez, Brown said that he would put a stop to them.[30] Rodriguez resigned the following morning, without reporting any harassment.[31]

---

[26]Id. at 59:7-10, 136:3-137:24, Docket Entry No. 60-2, pp. 9, 26.

[27]Id. at 137:25-139:8, and 144:22-146:11, Docket Entry No. 60-2, pp. 26-29.

[28]Id. at 153:19-154:15, 160:5-161:24, Docket Entry No. 60-2, pp. 30-32.

[29]Id. at 166:21-167:1, 173:8-18, Docket Entry No. 60-2, pp. 34-35.

[30]Id. at 147:19-150:12, Docket Entry No. 60-2, pp. 29-30.

[31]Id. at 172:5-21, Docket Entry No. 60-2, p. 35.

## II. **Procedural Background**

In January of 2023 Rodriguez filed a charge of discrimination with the Equal Opportunity Employment Commission ("EEOC") and sent Sabre a demand letter.[32] "'Sabre subsequently conducted an investigation and issued a litigation hold to Brown' on February 9, 2023."[33]

On July 31, 2024, Rodriguez filed her Original Complaint (Docket Entry No. 1) alleging claims against Brown and the Sabre defendants.

> Nine days later, before Sabre or Brown had been served, Sabre fired Brown "for performance reasons," collected his work phone "as part of the exiting process," and wiped it — "mistakenly" forgetting about its own litigation hold and destroying the [nude] photo of [Rodriguez] and the record to whom Brown sent it.[34]

---

[32]<u>See</u> Judge Palermo's Report and Recommendation, Docket Entry No. 83, p. 2 (quoting October 16, 2025, Letter to Magistrate Judge Palermo, Docket Entry No. 55, p. 2 ("On January 30, 2023 — seven months after her resignation — Sabre received a demand letter from [Rodriguez]'s counsel notifying Sabre for the first time of the alleged events on June 28, 2022.")).

[33]<u>Id.</u> at 3 (citing Legal Hold Notice and Directive to Preserve Records to Chris Brown Dated February 9, 2023, Exhibit D to Defendants' Response to Plaintiff's Motion for Sanctions Due to Spoliation, Docket Entry No. 72-1, p. 39).

[34]<u>Id.</u> at 4 (citing Declaration of Lisa Harrison, ¶¶ 4-5, and Declaration of Barry Holand, ¶¶ 2-3, Exhibits F and G, respectively, to Defendants' Response to Plaintiff's Motion for Sanctions Due to Spoliation, Docket Entry No. 72-1, pp. 51 ¶¶ 4-5, and 53 ¶¶ 2-3).

On February 10, 2025, the court entered an Order (Docket Entry No. 27) referring all pretrial proceedings to Magistrate Judge Dena Hanovice Palermo pursuant to 28 U.S.C. § 636(b)(1)(A).

On March 7, 2025, Rodriguez added Andrade as a defendant by filing Plaintiff's First Amended Complaint (Docket Entry No. 32) alleging that Andrade had assaulted her in violation of Texas law.

On October 30, 2025, the parties filed a Joint Notice of Stipulation of Dismissal of Defendant Chris Brown (Docket Entry No. 57).

On November 6, 2025, the Sabre Defendants and Andrade filed their joint Motion for Summary Judgment (Docket Entry No. 60).

On November 20, 2025, the parties filed competing spoliation motions: Plaintiff's Motion (Docket Entry No. 68), and Defendants' Motion (Docket Entry No. 69). On June 12, 2026, Magistrate Judge Palermo issued a Report and Recommendation (Docket Entry No. 83), recommending that Defendants' motion be denied, and that Plaintiff's motion be granted. Judge Palermo also recommended that the jury in any subsequent trial receive an adverse inference instruction regarding Defendants' destruction of evidence on Brown's cell phone.

On July 27, 2026, the court entered and Order of Adoption adopting Magistrate Judge Palermo's Report and Recommendation on the parties' spoliation motions.

## III. Standards of Review

### A. Review of Report and Recommendation

The Court must conduct a de novo review of any of the Magistrate Judge's conclusions to which a party has specifically objected. See 28 U.S.C. § 636(b)(1)(C). The objections must specifically identify those findings or recommendations that the party wishes to have the district court consider. Thomas v. Arn, 106 S. Ct. 466, 473 (1985). "Frivolous, conclusive, or general objections need not be considered by the district court." Battle v. United States Parole Commission, 834 F.2d 419, 421 (5th Cir. 1987) (quoting Nettles v. Wainwright, 677 F.2d 404, 410 n. 8 (5th Cir. 1982)(en banc), overruled on other grounds by Douglas v. United Services Automobile Association, 79 F.3d 1415 (5th Cir. 1996)). "A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C). Findings to which no specific objections are made do not require de novo review; the Court need only determine whether the recommendation is clearly erroneous or contrary to law. See United States v. Wilson, 864 F.2d 1219, 1221 (5th Cir.) (per curiam), cert. denied, 109 S. Ct. 3243 (1989).

**B. Motion for Summary Judgment**

Summary judgment is authorized if the movant establishes that there is no genuine dispute about any material fact, and the law entitles it to judgment. Fed. R. Civ. P. 56. Factual disputes are "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc., 106 S. Ct. 2505, 2511 (1986). The Supreme Court has interpreted the plain language of Rule 56 to mandate the entry of summary judgment "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 106 S. Ct. 2548, 2552 (1986). "[T]he party moving for summary judgment must 'demonstrate the absence of a genuine issue of material fact,' but need not negate the elements of the nonmovant's case." Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam) (quoting Celotex, 106 S. Ct. at 2553). If the moving party meets this burden, the nonmovant must go beyond the pleadings and show by affidavits, depositions, answers to interrogatories, or other admissible evidence that facts exist over which there is a genuine issue for trial. Id. (citing Celotex, 106 S. Ct. at 2553-2554). "For any matter on which the non-movant would bear the burden of proof at trial . . . the movant may merely point to the absence of evidence and thereby shift to the non-movant the burden of

demonstrating by competent summary judgment proof that there is an issue of material fact warranting trial." Transamerica Insurance Co. v. Avenell, 66 F.3d 715, 718-19 (5th Cir. 1995) (per curiam) (citing Celotex, 106 S. Ct. at 2552-2553).

To prevent summary judgment, "the non-moving party must come forward with specific facts showing that there is a genuine issue for trial." Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp., 106 S. Ct. 1348, 1356 (1986) (citation omitted). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." Id. (citing First National Bank of Arizona v. Cities Service Co., 88 S. Ct. 1575, 1592 (1968)). "[T]he court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." Reeves v. Sanderson Plumbing Products, Inc., 120 S. Ct. 2097, 2110 (2000). Factual controversies are to be resolved in favor of the nonmovant, "but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." Little, 37 F.3d at 1075. "[T]he nonmoving party's burden is not affected by the type of case; summary judgment is appropriate in any case 'where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant.'" Id. (quoting Armstrong v. City of Dallas, 997 F.2d 62, 67 (5th Cir. 1993)).

## IV. Analysis

The Sabre Defendants seek summary judgment on Rodriguez's claims for hostile work environment, sex discrimination, constructive discharge, and retaliation under both Title VII and the Texas Commission on Human Rights Act,[35] and Andrade seeks summary judgment on Rodriguez's claims for infliction of bodily injury, threat of bodily injury, and offensive physical contact under Texas common law.[36]

### A. Unobjected-to Portions of the Report and Recommendation

Magistrate Judge Palermo recommends granting summary judgment on Rodriguez's assault claims against defendant Andrade for failure to cite any evidence capable of establishing that he assaulted her. Judge Palermo recommends granting summary judgment on Rodriguez's claims against the Sabre defendants for sexual discrimination for failure to cite evidence capable of establishing that she was treated less favorably than other similarly situated employees outside her protected class, for retaliation for failure to cite evidence capable of showing that she suffered an adverse employment action, and for constructive discharge for failure to distinguish her constructive discharge claims from her hostile work environment

[35]Defendants' Motion for Summary Judgment, Docket Entry No. 60, pp. 18-29.

[36]Id. at 29-30.

claims. Because no objections have been filed concerning these recommendations, the court has reviewed them and determined that they are not clearly erroneous or contrary to law. The court will therefore adopt the portions of the Report and Recommendation to which there are no objections as the opinion of the court. Defendants' Motion for Summary Judgment will be granted as to the assault claims asserted against defendant Andrade, and as to the claims for sexual discrimination, retaliation, and constructive discharge asserted against the Sabre Defendants.

**B. Defendants' Objections to the Report and Recommendation**

Magistrate Judge Palermo recommends denying the Sabre defendants' motion for summary judgment on Rodriguez's hostile work environment claims reasoning that genuine disputes exist as to (1) whether the alleged harassment altered Rodriguez's working conditions; (2) whether Rodriguez needs to prove that her employer knew or should have known of the harassment in question and failed to take prompt remedial action; and (3) whether the Sabre defendants are entitled to the affirmative defense recognized by the Supreme Court in Burlington Industry, Inc. v. Ellerth, 118 S. Ct. 2257, 2270 (1998), and Faragher v. City of Boca Raton, 118 S. Ct. 2275, 2293 (1998).[37]

[37]Report and Recommendation, Docket Entry No. 97, pp. 6-12.

The Sabre defendants object to Judge Palermo's recommendation regarding Rodriguez's hostile work environment claims arguing that (1) the Report and Recommendation treats a private, off-site encounter and unidentified rumors as an actionable workplace environment; (2) Brown was not Rodriguez's supervisor; (3) even assuming that Brown was Rodriguez's supervisor, the Report and Recommendation should have adjudicated the Ellerth/Faragher affirmative defense in their favor; and (4) the Report and Recommendation improperly relies on the nude photograph of Rodriguez and a separate spoliation ruling without identifying evidence that the photograph altered her workplace environment.[38]

Rodriguez argues that the court should adopt Magistrate Judge Palermo's Report and Recommendation because Judge Palermo correctly determined that Brown's status as her supervisor presents a fact issue for the jury, that summary judgment cannot be granted on the Ellerth/Faragher affirmative defense because Brown's supervisor status is undetermined, and that Judge Palermo correctly followed well-established Fifth Circuit precedent that an inference of spoliation, in combination with (not insubstantial) evidence, allows a plaintiff to survive summary judgment.[39]

---

[38]Defendants' Objections, Docket Entry No. 98, pp. 2-10.

[39]Plaintiff's Response, Docket Entry No. 99, pp. 2-13.

1. Applicable Law

"Title VII . . . forbids sexual harassment in the workplace as a form of sex discrimination." Newbury v. City of Windcrest, Texas, 991 F.3d 672, 675 (5th Cir. 2021) (citing Matherne v. Ruba Management, 624 F. App'x 835, 838-39 (5th Cir. 2015)(per curiam)). Identical legal standards govern claims under both Title VII and the Texas Commission on Human Rights Act. Hernandez v. Yellow Transportation, Inc., 670 F.3d 644, 650 (5th Cir.), cert. denied sub nom. Ketterer v. Yellow Transportation, Inc., 133 S. Ct. 136 (2012). Title VII recognizes two types of sexual harassment: quid-pro-quo and hostile environment harassment." Newberry, 991 F.3d at 675 (citing Casiano v. AT&T Corp., 213 F.3d 278, 283 (5th Cir. 2000)). Rodriguez alleges only the latter.

> A prima facie hostile work environment claim under Title VII requires proof of the following elements: (1) the plaintiff is a member of a protected class; (2) the plaintiff was subjected to unwanted or unwelcome sexual harassment; (3) the harassment was based on sex; (4) the harassment affected a term, condition, or privilege of employment; and (5) the employer knew or should have known about the harassment and failed to act promptly to address it.

Cerda v. Blue Cube Operations, L.L.C., 95 F.4th 996, 1003 (5th Cir. 2024) (citing Jones v. Flagship International, 793 F.2d 714, 719-20 (5th Cir. 1986), cert. denied, 107 S. Ct. 952 (1987)). When a supervisor is the harasser, the plaintiff need not establish the fifth element. Equal Employment Opportunity Commission v. Boh Brothers Construction Co., LLC, 731 F.3d 444, 453 (5th Cir. 2013) (en banc). See also Matherne, 624 F. App'x 840 ("[W]e have held

that where the harasser is a supervisor a plaintiff need not satisfy the fifth prong of the hostile work environment analysis."). Thus, analysis of an employer's liability for a hostile work environment depends on the status of the harasser. If the harassing employee is the victim's co-worker, the employer is liable only if it was negligent in controlling working conditions, in which case the plaintiff must establish all five elements of a prima facie case. Vance v. Ball State University, 133 S. Ct. 2434, 2439 (2013).

In cases in which the harasser is a "supervisor," however, different rules apply. "[A]n employee is a 'supervisor' for purposes of vicarious liability under Title VII if he or she is empowered by the employer to take tangible employment actions against the victim." Id. If the supervisor's harassment culminates in a tangible employment action, the employer is strictly liable. But if no tangible employment action is taken, the employer may escape liability by establishing, as an affirmative defense, that

> (1) the employer exercised reasonable care to prevent and correct promptly any harassing behavior and (2) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities that the employer provided.

Id. (citing Faragher, 118 S. Ct. at 2293, and Ellerth, at 765, 118 S. Ct. at 2270).

2. Application of the Law to the Facts

Asserting that they are entitled to summary judgment because Rodriguez failed to establish the fourth or fifth elements of her hostile work environment claim,[40] the Sabre Defendants object to the Magistrate Judge's recommendation that their motion for summary judgment on that claim be denied. The Sabre Defendants argue that the Report and Recommendation

> improperly converts a private, off-duty encounter into a workplace condition based on unidentified, unverified rumors, applies a conception of "supervisor" broader than the controlling rule in Vance v. Ball State University[, 133 S. Ct. 2434 (2013)]; and then declines to analyze Sabre's Faragher/Ellerth defense even though the undipsuted facts establish both elements of that defense.[41]

(a) Rodriguez Has Cited Evidence Raising a Genuine Issue of Material Fact as to the Fourth Element of Her Hostile Work Environment Claim

Asserting that the Report and Recommendation "identifies no repeated workplace conduct, threat, sexual proposition, [or] display of the [nude] photograph at work, interference with [Rodriguez's] duties, or conduct by an identified coworker,"[42] the

---

[40]Defendants' Motion for Summary Judgment, Docket Entry No. 60, pp. 18-23. See also Defendants' Reply in Further Support of Their Motion for Summary Judgment, Docket Entry No. 79, p. 15 n. 32 ("For purposes of summary judgment only, Sabre does not dispute the[] first three elements — not because they are conceded, but because even assuming they are met, Rodriguez cannot satisfy the remaining required elements.").

[41]Defendants' Objections, Docket Entry No. 98, pp. 1-2.

[42]Id. at 5.

Sabre Defendants argue that Rodriguez cannot establish the fourth element of her hostile environment claim "[b]ecause the off-site event lacks the necessary employment nexus and the rumor evidence independently falls short."[43] Rodriguez responds that the "Magistrate Judge correctly determined that the sexual assault and the resulting workplace rumormongering combined to create a fact issue on hostile work environment."[44]

To satisfy the fourth element of a hostile work environment claim, the sexual harassment must be "so 'severe or pervasive' as 'to alter the conditions of [the victim's] employment and create an abusive working environment.'" Faragher, 118 S. Ct. at 2283 (quoting Meritor Savings Bank, FSB v. Vinson, 106 S. Ct. 2399, 2403 (1986)). The "environment must be both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so." Id. (citing Harris v. Forklift Systems, Inc., 114 S. Ct. 367, 370-71 (1993)). The Supreme Court has directed lower courts

> to determine whether an environment is sufficiently hostile or abusive by "looking at all the circumstances," including the "frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance."

Id. (quoting Harris, 114 S. Ct. at 371). The Court emphasized "that conduct must be extreme to amount to a change in the terms

---

[43]Id.

[44]Plaintiff's Response, Docket Entry No. 99, p. 2.

and conditions of employment." Id. at 2284. The Court observed that "isolated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment.'" Id. at 2283 (quoting Oncale v. Sundowner Offshore Services, Inc., 118 S. Ct. 998, 1003 (1998)). The Fifth Circuit has similarly observed that "[a]n egregious, yet isolated, incident can alter the terms, conditions, or privileges of employment and satisfy the fourth element necessary to constitute a hostile work environment." Lauderdale v. Texas Department of Criminal Justice, Institutional Division, 512 F.3d 157, 163 (5th Cir. 2007) (citing Harvill v. Westward Communications, L.L.C., 433 F.3d 428, 434-35 (5th Cir. 2005)(holding that deliberate, unwanted touching of intimate body parts can constitute severe sexual harassment)).

The undisputed evidence is that using his Sabre-issued work phone, Brown took a nude photograph of Rodriguez and sent it to at least two non-Sabre-related individuals, and thereafter had sex with Rodriguez.[45] As detailed in a separate Report and Recommendation (Docket Entry No. 83), Rodriguez could not verify whether Brown sent the photograph to any Sabre employees because, despite the existence of a litigation hold, Sabre wiped Brown's phone data following his discharge soon after this action was

[45]Brown Deposition, pp. 64:5-70:8, Docket Entry No. 60-5, pp. 9-11.

filed.[46] The day after the photograph was taken Rodriguez heard from Garcia that Sabre employees were rumormongering that she had had sex with both Brown and Andrade.[47]

Citing undisputed evidence that the alleged assault occurred after work away from Sabre's premises at Brown's hotel, the Sabre Defendants argue that the assault did not affect the terms, conditions, or privileges of Rodriguez's employment.[48] Without disputing that workplace rumors the next day affected Rodriguez's work conditions, the Sabre Defendants argue that the rumors were not sufficiently severe or pervasive to create a hostile environment.[49] Rejecting that argument, Magistrate Judge Palermo concluded that a genuine issue of material fact exists with respect to the fourth element of Rodriguez's claim because a reasonable jury could conclude from the undisputed evidence "that Brown's alleged sexual assault and the subsequent salacious workplace rumors combined to constitute a hostile work environment."[50]

---

[46]See Report and Recommendation, Docket Entry No. 97, p. 8 (citing Judge Palermo's Report and Recommendation, Docket Entry No. 83, p. 4).

[47]Rodriguez Deposition, pp. 136:3-139:11, Docket Entry No. 60-2, pp. 26-29.

[48]Defendants' Objections, Docket Entry No. 98, p. 2.

[49]Id. at 4-5.

[50]Report and Recommendation, Docket Entry No. 97, p. 9.

While rumors alone — especially second-hand rumors — are insufficient to constitute actionable harassment because they are the type of sporadic offhand comments that fall outside of Title VII's ambit, see Loperena v. Myorkas, No. 1:21-cv-59, 2023 WL 7928701, *9 (S.D. Tex. October 16, 2023), Report and Recommendation adopted, 2023 WL 7926806 (S.D. Tex. November 16, 2023), Brown's distribution of a nude photograph and sexual assault of Rodriguez are the type of single incidents that courts have held are sufficiently severe to alter the conditions of the victim's employment and thereby create a hostile work environment. See Harvill, 433 F.3d at 436 ("Undoubtedly, the deliberate and unwanted touching of Harvill's intimate body parts can constitute severe sexual harassment"); Meritor, 106 S. Ct. at 2402, 2405-06 (holding allegations of harassment that included a claim of rape sufficient to state a claim for hostile environment harassment). See also Tomka v. Seiler Corp., 66 F.3d 1295, 1305 (2d Cir. 1995), ("[E]ven a single incident of sexual assault sufficiently alters the conditions of the victim's employment and clearly creates an abusive work environment for the purposes of Title VII liability."), abrogated on other grounds by Ellerth, 118 S. Ct. at 2257.

Although Rodriguez lacks evidence that the nude photograph was distributed at her workplace, the rumor that she had sex with Brown coupled with the adverse inference that jurors may draw from the

court's spoliation ruling would allow a reasonable jury to conclude that the nude photo was, in fact, shared with Sabre employees at Rodriguez's workplace. See Whitt v. Stephens County, 529 F.3d 278, 284-85 (5th Cir. 2008) ("[I]n borderline cases, an inference of spoliation, in combination with some (not insubstantial) evidence for the plaintiff's cause of action, can allow the plaintiff to survive summary judgment.") (quoting Byrnie v. Town of Cromwell, Board of Education, 243 F.3d 93, 107 (2d Cir. 2001)). See also Van Winkel v. Rogers, 82 F.4th 370, 382 (5th Cir. 2023) ("If the trier of fact finds a bad faith motive, Van Winkle is entitled to an adverse inference that Defendants destroyed the tire because they knew it was unfavorable to them."). The Sabre Defendants' attempt to distinguish Whitt and Van Winkle,[51] is to no avail because like the missing tire at issue in Van Winkle, the missing evidence in this case is the nude photograph of Rodriguez and the data showing to whom Brown sent it. The Sabre Defendants' objections to Judge Palermo's finding as to whether Rodriguez has cited evidence capable of establishing that she suffered a hostile work environment are therefore **OVERRULED**.

(b) Rodriguez Has Failed to Cite Evidence Capable of Raising Genuine Issues of Material Fact as to the Fifth Element of Her Hostile Work Environment Claim

Citing Vance, 133 S. Ct. at 2443, for holding that

---

[51]See Defendants' Reply, Docket Entry No. 100, pp. 12-13.

> an employer may be vicariously liable for an employee's unlawful harassment only when the employer has empowered that employee to take tangible employment actions against the victim, i.e., to effect a "significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits,"

the Sabre Defendants object to Judge Palermo's "finding that Brown's job description, authority to discipline other employees, and attendance at supervisor training create a fact issue as to whether he supervised [Rodriguez]."[52] Asserting that Brown was Rodriguez' coworker, not her supervisor for Title VII purposes, the Sabre Defendants argue that Rodriguez has failed to cite evidence capable of establishing the fifth element of her hostile work environment claim, i.e., that an appropriate Sabre official knew or should have known of the harassment and failed to take prompt remedial action.[53] Asserting that she does not need to establish the fifth element of a hostile work environment claim because Brown was her supervisor, Rodriguez responds that the "Magistrate correctly determined that Chris Brown's 'supervisor' status presents a fact issue for the jury."[54] The Fifth Circuit has held that when the alleged harasser is a supervisor a plaintiff need not satisfy the fifth prong of the hostile work environment analysis. Boh Brothers, 731 F.3d at 453; Matherne, 624 F. App'x at 840.

---

[52]Defendants' Objections, Docket Entry No. 98, p. 5.

[53]Id. at 7.

[54]Plaintiff's Response, Docket Entry No. 99, p. 8.

(I) Rodriguez Fails to Cite Evidence from which a Reasonable Jury Could Find that Brown Was Her Supervisor

Citing Ellerth, 118 S. Ct. at 2270, for holding that an employer is subject to vicarious liability to a victimized employee for an actionable hostile environment created by a supervisor with "immediate (or successively higher) authority over the employee,"[55] Rodriguez argues that she has "copious evidence in support of her claim that Chris Brown was her Title VII 'supervisor.'"[56] Rodriguez argues that her

> evidence includes not only Brown's job title (Vice President and General Manager of the Conroe facility, who reported directly to the Sabre CEO), but also Brown's job description, and his deposition testimony about his relationship with the Conroe facility and its employees, including his ability to fire employees there.[57]

Rodriguez argues that "Brown admitted that he supervised Andy Andrade (the Plant Superintendent of the Conroe facility), who in turn directed and approved Rodriguez's activities, showing that Brown had the 'successively higher' authority over Rodriguez that rendered him her 'supervisor' under Title VII."[58] But missing from

---

[55]Id. at 9.

[56]Id. at 10.

[57]Id.

[58]Id.

Rodriguez's briefing are cites to summary judgment evidence substantiating these arguments.[59]

In Vance the Supreme Court held that a "supervisor" for Title VII purposes is an employee "empowered by the employer to take tangible employment actions against the victim." 133 S. Ct. at 2439. See also id. at 2443. A tangible employment action is "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." Id. at 2442 (citing Ellerth, 118 S. Ct. at 2268). "A tangible employment decision requires an official act of the enterprise, a company act. The decision in most cases is documented in official company records, and may be subject to review by higher level supervisors." Id. (citing Ellerth, 118 S. Ct. at 22268-69). Undisputed evidence shows that neither Andrade nor Brown were empowered by the Sabre Defendants to take tangible employment actions against Rodriguez.

As the Sabre Defendants point out, the most direct evidence refuting Rodriguez's claims that Brown and Andrade were her supervisors comes from her own testimony.[60] Rodriguez testified that when in 2021 Sabre hired her as a Human Resources Specialist,

---

[59]See id. at 9-10 (lacking any cite to the summary judgment evidence).

[60]Defendants' Reply in Further Support of Their Motion for Summary Judgment, Docket Entry No. 79, pp. 11-12.

she reported directly to Human Resources Manager Rona Shannon,[61] and that Shannon reported to Lisa Harrison, who was the ultimate authority and supervisor over the Conroe Human Resources department.[62] Harrison was Sabre's Vice President of Human Resources.[63] Rodriguez also testified that she never reported to either Andrade or Brown in any supervisory capacity, that neither Andrade nor Brown ever reached out to her for assistance, and that her only interaction with Andrade and Brown was cordial.[64]

Brown testified that he had no supervisory authority over Rodriguez, that she never reported to him, and that she had no obligation to listen to or follow instructions from him.[65] Brown testified that he was not involved with hiring, firing, or supervising employees at the Conroe facility,[66] but that he had supervisory authority over Andrade, who reported to him.[67] Andrade testified that neither he nor Brown had supervisory authority over Rodriguez.[68] While the record indicates that Brown had supervisory

---

[61]Rodriguez Deposition, p. 35:13-18, Docket Entry No. 60-2, p. 6.

[62]Id. at 37:14-24, Docket Entry No. 60-2, p. 6.

[63]Harrison Declaration, Docket Entry No. 60-1, p. 1 ¶ 1.

[64]Rodriguez Deposition, pp. 48:11-49:14, Docket Entry No. 60-2, p. 8.

[65]Brown Deposition, p. 29:6-13, Docket Entry No. 60-5, p. 6.

[66]Id. at 28:18-21, Docket Entry No. 60-5, p. 6.

[67]Id. at 29:13-21, Docket Entry No. 60-5, p. 6.

[68]Oral Deposition of Andy Andrade ("Andrade Deposition"), (continued...)

authority over Andrade, and that Andrade was the plant superintendent at the Conroe facility where Rodriguez worked,[69] the record is clear that Brown's and Andrade's supervisory and leadership responsibilities were confined to the galvanizing division and did not extend to the Human Resources division where Rodriguez worked.[70]

In Vance the Court held that mere "leadership responsibilities" are insufficient to place an employee in the "unitary category of supervisors" with authority to cause "a significant change in employment status." 133 S. Ct. at 2449-54. Because there is no evidence that Sabre empowered Brown or Andrade to take any tangible employment actions against Rodriguez, Rodriguez is not relieved of her burden under the fifth prong as to her claims against the Sabre Defendants. See Bo Brothers, 731 F.3d at 435, and Matherne, 624 F. App'x at 840. The Sabre Defendants' objections to Judge Palermo's finding as to whether Rodriguez has cited evidence capable of establishing that Brown was her supervisor are therefore **SUSTAINED**.

---

[68](...continued)
p. 69:11-13, Exhibit A to Defendants' Reply in Further Support of Their Motion for Summary Judgment, Docket Entry No. 79-1, p. 4.

[69]Brown Deposition, p. 23:1-5, Docket Entry No. 60-5, p. 5.

[70]Id. at 26:16-22 (testifying that the HR department did not report to him "in any form or fashion"), 27:18-24 and 28:22-29:5 (testifying that he was in charge of the galvanizing division), Docket Entry No. 60-5, p. 6; Andrade Deposition, p. 93:6-8, Docket Entry No. 79-1, p. 5.

(ii) Undisputed Evidence Establishes that the Sabre Defendants Neither Knew nor Reasonably Should Have Known of the Alleged Harassment

To satisfy the fifth element of her hostile work environment claim, Rodriguez must cite evidence capable of proving that the Sabre Defendants knew or reasonably should have known of the alleged harassment and failed to take prompt remedial action. Cerda, 95 F.4th at 1003. "An employer can be put on notice of harassment, and therefore be required to take remedial action, if a person within the organization who has the 'authority to address the harassment problem' or an 'affirmative duty' to report harassment learns of the harassment in question." Abbt v. City of Houston, 28 F.4th 601, 607 (5th Cir. 2022) (quoting Williamson v. City of Houston, 148 F.3d 462, 466 (5th Cir. 1998)). "[T]he key to whose knowledge may be imputed to the employer is remedial power: There is no actual knowledge until someone with authority to address the problem is notified." Johnson v. Board of Supervisors of Louisiana State University and Agricultural and Mechanical College, 90 F.4th 449, 457 (5th Cir. 2024) (quoting Sharp v. City of Houston, 164 F.3d 923, 929-30 (5th Cir. 1999)).

Rodriguez testified that she resigned without reporting the alleged harassment, i.e., the assault or rumors, to anyone at Sabre,[71] that she never intended to report the assault or rumors to

[71]Rodriguez Deposition, p. 172:13-174:15, Docket Entry No. 60-2, pp. 35-36.

anyone at Sabre,[72] and that she did not want Garcia to report them to anyone at Sabre.[73] Thus by her own admission, Rodriguez resigned without reporting the alleged harassment to either her superiors in the Human Resources division or anyone else at Sabre with authority to remedy the harassment. Although Garcia knew about the rumors, Rodriguez testified that he was the maintenance manager at the Conroe facility.[74] Rodriguez does not cite any evidence capable of establishing that Garcia was a person within Sabre who possessed either "the authority to address the harassment problem," or an "affirmative duty" to report the harassment. Abbt, 28 F.4th at 607. Nor does Rodriguez cite any evidence from which anyone within Sabre with authority to remedy the harassment should have known about it. Absent any report of the alleged harassment or evidence that the Sabre Defendants should otherwise have known about the alleged harassment, Rodriguez cannot establish that the Sabre Defendants knew or should have known about the harassment and failed to take prompt remedial action. Rodriguez's hostile work environment claim therefore fails because, even accepting her allegations of harassment as true, she cannot make out the fifth element of a hostile work environment claim.

---

[72] Id. at 166:21-167:1, Docket Entry No. 60-2, p. 34.

[73] Id. at 255:11-22, Docket Entry No. 60-2, p. 41.

[74] Id. at 59:7-10, Docket Entry No. 60-2, p. 9.

(c) Alternatively, the Sabre Defendants Are Entitled to Summary Judgment Based on the Ellerth/Faragher Affirmative Defense

Alternatively, the Sabre Defendants object to Judge Palermo's "conclusion that the applicability of the Faragher/Ellerth defense 'depends on whether Brown was Plaintiff's supervisor.'"[75] Asserting that if, as Rodriguez argues, "Brown was [her] supervisor, the Faragher/Ellerth defense becomes available because no tangible employment action occurred," the Sabre Defendants argue that "the two alternative classifications lead to two distinct routes to summary judgment; they do not preclude it."[76] Without disputing that no tangible employment action occurred, Rodriguez responds that "[t]he Magistrate correctly determined that summary judgment cannot be granted on Sabre's Ellerth/Faragher defense where Brown's 'supervisor' status is undetermined."[77]

"To succeed on summary judgment in reliance on an affirmative defense, the moving party must establish beyond peradventure all of the essential elements of the defense to warrant judgment in its favor." Wallace v. Performance Contractors, Inc., 57 F.4th 209, 223 (5th Cir. 2023) (quoting Smith v. Oschner Health System, 956 F.3d 681, 683 (5th Cir. 2020)).

> Under the Ellerth/Faragher affirmative defense, "an employer will not be vicariously liable for harassment by a supervisor if it can show" that (1) "the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior," and (2) the "employee

---

[75]Defendants' Objections, Docket Entry No. 98, p. 7.

[76]Id. at 8.

[77]Plaintiff's Response, Docket Entry No. 99, p. 10.

> unreasonably failed to take advantage of any preventative or corrective opportunities provided by the employer or to avoid harm otherwise."

Id. (quoting Boh Brothers, 731 F.3d at 462 (citing Faragher, 118 S. Ct. at 2292-93, and Ellerth, 118 S. Ct. at 2270)).

The undisputed evidence establishes that Sabre took reasonable care to prevent harassment by promulgating and distributing a sexual harassment policy that provided multiple reporting channels.[78] Rodriguez, a Human Resources Specialist, testified that she was aware of Sabre's sexual harassment policy, that she knew how and to whom she could report harassment,[79] and that she was sure Sabre would investigate and address such a report.[80] Rodriguez does not cite evidence that Sabre failed to implement its harassment policy or ignored a prior complaint about Brown or anyone else. Moreover, when Sabre received Rodriguez's demand letter, Sabre "conducted an investigation and issued a litigation hold to Brown."[81] This undisputed evidence establishes that Sabre exercised reasonable care to prevent and correct promptly sexually harassing behavior.

---

[78]See Discrimination, Harassment, and Equal Opportunity Policy, Exhibit D to Defendants' MSJ, Docket Entry No. 60-4, p. 2.

[79]Rodriguez Deposition, pp. 42:2-20, 256:19-259:14, Docket Entry No. 60-2, pp. 7, 41-42.

[80]Id. at 200:17-201:1, Docket Entry No. 60-2, p. 39.

[81]See Judge Palermo's Report and Recommendation, Docket Entry No. 83, p. 3 (citing Legal Hold Notice and Directive to Preserve Records to Chris Brown Dated February 9, 2023, Exhibit D to Defendants' Response to Plaintiff's Motion for Sanctions Due to Spoliation, Docket Entry No. 72-1, p. 39).

The undisputed evidence also establishes that despite knowing how and to whom to report sexual harassment, and being sure that Sabre would investigate such a report, Rodriguez resigned without reporting the alleged harassment to her supervisors or anyone else at Sabre with remedial authority.[82] Instead of taking advantage of Sabre's preventative or corrective opportunities, Rodriguez testified that she never intended to report the alleged harassment to anyone at Sabre,[83] and that she did not want Garcia to report it to anyone at Sabre.[84] The only reason Rodriguez has given for not reporting the alleged harassment is that she felt scared and embarrassed, and just wanted to forget and move away from it.[85] This undisputed evidence establishes that Rodriguez unreasonably failed to take advantage of Sabre's corrective opportunities.

Because if, as Rodriguez argues, Brown was her supervisor, the court concludes that undisputed evidence establishes that both prongs of the Ellerth/Faragher affirmative defense are satisfied, the Sabre Defendants' objections to Judge Palermo's decision not to analyze their assertion of entitlement to the Ellerth/Faragher affirmative defense are **SUSTAINED**.

---

[82]Rodriguez Deposition, p. 172:13-174:15, Docket Entry No. 60-2, pp. 35-36.

[83]Id. at 166:21-167:1, Docket Entry No. 60-2, p. 34.

[84]Id. at 255:11-22, Docket Entry No. 60-2, p. 41.

[85]Id. at 197:18-200:12, Docket Entry No. 60-2, pp. 38-39.

## V. CONCLUSIONS AND ORDER

For the reasons stated on the second page of this Memorandum Opinion and Order, Plaintiff's Motion to Strike Defendants' Reply in Further Support of Their Objections to Report and Recommendations, Docket Entry No. 101, is **DENIED as MOOT.**

For the reasons stated above in § IV.A, the court **ADOPTS** as the opinion of the court the portions of Magistrate Judge Palermo's Report and Recommendation to which there are no objections.

For the reasons stated above in § IV.B, Defendants' objections to Magistrate Judge Palermo's Report and Recommendation (Docket Entry No. 98) are **OVERRULED IN PART AND SUSTAINED IN PART,** and Magistrate Judge Palermo's recommendation to deny Defendants' motion for summary judgment on Rodriguez's hostile work environment claim is **REJECTED.**

Magistrate Judge Palermo's Report and Recommendation, Docket Entry No. 97, is therefore **ADOPTED IN PART** and **REJECTED IN PART,** and Defendants' Motion for Summary Judgment, Docket Entry No. 60, is **GRANTED.**

**SIGNED** at Houston, Texas, this 28th day of September, 2026.

SIM LAKE
SENIOR UNITED STATES DISTRICT JUDGE